# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID C. ANDERSON,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>　　　　　　Defendant. | )  1:06cv1184 DLB<br>)<br>)<br>)  ORDER REGARDING PLAINTIFF'S<br>)  SOCIAL SECURITY COMPLAINT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## BACKGROUND

Plaintiff David C. Anderson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for supplemental security income and disability insurance benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On December 5, 2006, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff filed his applications in August 2004, alleging disability since February 28, 1998, due to vision problems, neuropathy in his legs, depression, and diabetes. AR 60-62, 67-73. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 27-31, 35-40, 41. On February 1, 2006, ALJ William C. Thompson held a hearing. AR 209-293. ALJ Thompson denied benefits on March 17, 2006. AR 10-20. The Appeals Council denied review on July 6, 2006. AR 5-8.

Hearing Testimony

ALJ Thompson held a hearing on February 1, 2006, in Stockton, California. Plaintiff appeared with his attorney, Jeffrey Duarte. Vocational expert ("VE") Susan Cregton-Clovelle also appeared and testified. AR 209.

Plaintiff testified that he was 53 years old at the time of the hearing. He received an Associate's Degree and a degree as a registered nurse. AR 214. He last worked in 1997 and has not attempted to work since. From 1980 through 1997, he worked as a registered nurse in an acute psychiatric facility. AR 215. He stopped working in 1997 because he began having severe leg pain. He had prickling pain in his thighs and pain shooting down to his feet. AR 216. He also had difficulty walking and he was diagnosed with peripheral neuropathy. AR 216.

He testified that he could not work because he has a decrease in his field of vision that would interfere with his functions as a nurse. He also has neuropathy of the hands and a severe decrease in strength and coordination, particularly in his right hand. He was first diagnosed with diabetes in 1961 and sees a doctor three of four times a year for treatment. He is on both short-acting and long-acting insulin and also takes blood pressure medications. AR 217. He follows a diabetic diet, but his blood sugar fluctuates. His last hypoglycemic episode was a few nights ago. AR 218. Plaintiff also takes medication that helps him sleep, and is able to get about three to four hours of sleep. AR 219.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

      Plaintiff testified that he has chronic insomnia, but that he is not being treated for any mental or emotional problems. AR 220. He lived off an inheritance for a few years but eventually moved in with his sister and brother-in-law when he could no longer afford to live alone. AR 220.

      Plaintiff has no vision in his right eye. Although he sees "okay," he has problems reading small print with his left eye and has problems with depth of field. He also has neuropathy that affects both feet, but the pain in his left leg is worse. AR 221. He has not had any ulcers on his legs or feet but has noticed that cuts take a lot longer to heal. AR 222.

      On a typical day, Plaintiff watches television, reads newspapers and occasionally goes for a walk. AR 222. He walks about a quarter mile (15-20 minutes) about once or twice a week. He helps clean the house and does the grocery shopping by himself once every two weeks. He is able to drive. AR 222. He goes to the mall or bookstore once every week to ten days. AR 225. He uses a computer every night at home to get onto the internet, and is able to read and use the computer for about 20 to 35 minutes at a time. Beyond that, he gets frequent headaches and eye aches in his left eye from over-use. AR 223. He can use his fingers to type, but does "two-finger" typing and never learned touch-typing. AR 223. He uses his right hand for the mouse and is able to maneuver it satisfactorily. The configurations are enlarged because of his vision. AR 224.

      Plaintiff thought he could walk for a quarter to half a mile and could stand for 20-25 minutes due to pain in the back of his legs and sore back. He can only sit for 40-45 minutes in a spring-back chair because of back pain. He can sit in a hard back chair for an hour to an hour and a half before needing to stretch because of muscle soreness. AR 225. When he does his grocery shopping, he is able to take items off the shelf and put them in his cart and is able to lift and move a full gallon of milk to his cart. AR 225. He can carry the groceries into the house. AR 226.

      When questioned by his attorney, Plaintiff testified that he could not stand for up to six hours a day because of the pain. When he goes for walks, he has to stop and take breaks. AR

228. He has a shortened attention span and has difficulty following instructions because of his insomnia. AR 229.

The VE testified that Plaintiff's past work as a nurse was medium work. AR 229.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and past work, who could lift 20 pounds occasionally and 10 pounds frequently, and stand and walk in combination for about six hours. This person could sit with normal breaks for about six hours, but should avoid forceful, constant pushing and pulling. This person could occasionally climb, balance, stoop, kneel, crouch, and crawl, and should avoid forceful gripping and grasping. This person can perform frequent, but not consistent, handling and frequent, but not consistent, fingering. He does not have good depth perception. The VE testified that this person could perform the positions of unit clerk, companion, diet clerk, and appointment clerk. AR 229-230. For unskilled positions, Plaintiff could perform the jobs of parking lot attendant and information clerk. AR 230-231.

For the second hypothetical, the ALJ asked the VE to assume a person who could lift and carry up to 20 pounds frequently, 50 pounds occasionally, sit for eight hours without interruption, for a total of eight hours, stand for one hour without interruption, for a total of three hours, and walk for one hour without interruption, for a total of three hours. He could occasionally perform simple grasping with both hands and fine manipulation with the right hand, but could never perform fine manipulation with the left hand. He could use his feet frequently. He could frequently climb, balance, stoop, crouch, kneel and crawl, and could continuously reach, handle, feel, push/pull, hear and speak. He was restricted in working around heights. The VE testified that these limitations would not preclude the jobs she identified. AR 231.

The VE testified that her job classifications were consistent with those in the Dictionary of Occupational Titles ("DOT") and that she did not have to make any departures in identifying and classifying jobs. AR 232.

When questioned by Plaintiff's attorney, the VE indicated that the diet clerk position required frequent handling and frequent fingering. AR 236. The position of information clerk requires very little fine manipulation. AR 238.

**Medical Record**

In August 2002, Plaintiff saw I. Ackerman, M.D., at Kaiser Permanente.  Plaintiff reported that he was not working and was financially okay.  He indicated that he would probably retrain.  AR 135.

On May 5, 2003, Plaintiff returned to Dr. Ackerman and reported that he was looking for a job but had not yet found one.  AR 133.

On September 22, 2003, Plaintiff told Dr. Ackerman that he had let his registered nurse license lapse but was renewing it.  AR 131.  He also reported that he was under much stress and was referred to a psychologist.  AR 131.

In March 2004, Plaintiff saw Garrison Tong, M.D., for a diabetes consultation.  Plaintiff was diagnosed with type I diabetes at age 9.  The dictated report reads, "He works graveyard shifts at various jobs.  He used to be a registered nurse at Edgemont, so his daily hours are different from routine."  AR 121.  Dr. Tong indicated that Plaintiff was doing well on his regime. His finger sticks were high and Dr. Tong discussed using a different insulin because of Plaintiff's "erratic schedule" and his non-routine sleep-wake cycle.  AR 122.  Plaintiff's blood pressure was well controlled.  AR 122.

Plaintiff began seeing Hector Ley-Han at Kaiser Permanente on June 30, 2004.  AR 117. He reported that he was unemployed.  Dr. Ley-Han indicated that Plaintiff's diabetes was under fair control, that his hypertension was controlled on medication, and that his neuropathy was stable on medication.  He referred Plaintiff to an ophthalmologist for evaluation of his retinopathy.  AR 118.

Plaintiff saw Dr. Ley-Han on November 11, 2004, and reported that his blood sugar was doing well.  Dr. Ley-Han noted that his diabetes was under good control and instructed Plaintiff to lose weight and increase his activity.  AR 116.

On December 1, 2004, Plaintiff saw Harsimrat Sandhu, M.D., for a psychiatric evaluation.  Plaintiff complained of increased depression since 1998, when he lost his right eye. He further reported that he worked as a nurse from 1981 through 1998, when he lost vision in his right eye.  He was functioning well until his physical difficulties increased.  He reported that he

5

may microwave food and does some sweeping once a week.  On examination, Plaintiff's affect was restricted and his mood was anxious.  Dr. Sandhu diagnosed major depressive disorder, moderate, without psychotic features, and panic disorder with agoraphobia.  Plaintiff could perform simple, repetitive tasks, as well as detailed, complex tasks, as evidenced by his ability to complete a three-step command.  He would be able to accept instructions from supervisors and interact with co-workers and the public.  Dr. Sandhu did not see a psychiatric reason why Plaintiff would not be able to perform work activities on a consistent basis, deal with usual stress and maintain regular attendance.  He stated, however, that Plaintiff "may have some difficulty with fatigue that may interfere with his ability to complete a normal workday."  AR 184-187.

On December 10, 2004, Plaintiff saw Steve McIntire, M.D., for a consultive neurologic examination.  Plaintiff had a long history of diabetes and complications from diabetes.  He had no vision in his right eye and also has a history of diabetic neuropathy.  Plaintiff reported that he does housework at home.  On examination, his gait was normal and he was able to walk on his heels and toes.  There was slight nodularity of the digits of both hands and a loss of about five degrees extension of the digits of both hands.  There was atrophy of the intrinsic muscles of both hands and weakness of the hands.  There was also weakness in the feet in his toe flexors and extensors.  There was no drift or tremor and fine finger movements were intact.  Plaintiff had mildly diminished appreciation of soft touch and small fiber modalities in the distal lower extremities.  He had trace Achilles reflexes bilaterally.  His right eyelid was closed and he had no vision in his right eye.  He was diagnosed with blindness of the right eye and diabetic neuropathy.  AR 180-182.

Dr. McIntire opined that Plaintiff would have "significant functional limitations."  He would be limited to six hours of walking or standing, with no more than two hours of continuous standing or walking.  He could occasionally climb and had no limitations in sitting.  He could lift and carry 20 pounds occasionally and 10 pounds frequently.  Plaintiff had "significant" manipulative limitations.  He could not engage in power gripping activities with his hands and would have difficulty with activities requiring very fine or precise finger movements such as

typing or keyboard work.  He could not engage in more than occasional handwriting activities.  He could engage in light gripping and grasping functions with his hands.  AR 183.

On January 6, 2005, State Agency physician Kenneth D. Michael, M.D., completed a Psychiatric Review Technique form and opined that Plaintiff's depression and panic disorder were not severe impairments.  AR 157.

On April 7, 2005, Plaintiff saw Dr. Ley-Han and requested he complete a form for work capacity.  He noted that Plaintiff had "some trouble" grasping bilaterally, the left more than the right.  He also noted that Plaintiff was unable to do fine manipulation such as trimming his nails.  He has trouble with his depth perception due to blindness in his right eye and retinopathy.  AR 114.

In the Medical Report form dated April 7, 2005, Dr. Ley-Han stated that Plaintiff's response to treatment was "stable" and that his prognosis was "good."  He opined that Plaintiff could lift and carry up to 20 pounds frequently, 50 pounds occasionally, sit for eight hours without interruption, for a total of eight hours, stand for one hour without interruption, for a total of three hours, and walk for one hour without interruption, for a total of three hours.  He could occasionally perform simple grasping with both hands and fine manipulation with the right hand, but could never perform fine manipulation with the left hand.  He could use his feet frequently.  He could frequently climb, balance, stoop, crouch, kneel and crawl, and could continuously reach, handle, feel, push/pull, hear and speak.  He was restricted in working around heights.  AR 188-192.

On November 13, 2005, State Agency physician S. Clancey, M.D., completed a Physical Residual Functional Capacity Assessment form.  Dr. Clancey opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for about six hours and sit for about six hours.  He had to avoid forceful, constant pushing and pulling with his upper extremities.  He could occasionally climb, balance, stoop, kneel, crouch, and crawl.  He had to avoid forceful gripping and grasping and was precluded from constant handling and fingering (such as pegboarding and typing activities).  His field of vision was limited and he had to avoid

concentrated exposure to hazards. AR 171-178. This assessment was affirmed by David Pong, M.D., on May 10, 2005. AR 178.

ALJ's Findings

After reviewing the medical evidence, the ALJ determined that Plaintiff's peripheral neuropathy and retinopathy (loss of vision in his right eye) secondary to type I diabetes were severe impairments. AR 13. He further found that Plaintiff was not entirely credible. Plaintiff retained the residual functional capacity ("RFC") to perform light work. He could lift/carry 20 pounds occasionally and 10 pounds frequently, and could sit/stand/walk for six hours. He needed to avoid constant pushing/pulling, and could occasionally climb, balance, stoop, kneel, crouch and crawl. He also had to avoid forceful gripping and grasping, but could perform frequent handling and grasping. He could not perform positions that require good depth perception. AR 17.

Based on this RFC and the testimony of a VE, the ALJ found that Plaintiff could not perform his past work as a nurse, which was medium, skilled employment. Plaintiff had transferrable skills, however, and could perform a significant number of jobs in the national economy. These positions include unit clerk, companion, diet clerk, and appointment clerk. AR 18.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must

apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (peripheral neuropathy and retinopathy (loss of vision in his right eye) secondary to type I diabetes); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4;(4) could not perform his past relevant work; but (5) retains the RFC to perform a significant range of light work in the national economy. AR 19-20.

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

9

Plaintiff argues that the ALJ (1) improperly assessed his RFC; (2) improperly analyzed his credibility; and (3) failed to resolve the alleged conflicts between the VE's testimony and the DOT.

**DISCUSSION**

A.   The ALJ's RFC Assessment

Plaintiff's contention that the ALJ improperly assessed his RFC is based on his belief that the ALJ erred by not giving deference to Dr. Ley-Han's April 7, 2005, assessment and instead relying on Dr. McIntire's opinion. He argues that had the ALJ adopted Dr. Ley-Han's opinion, he would have been restricted to sedentary work. Prior to reviewing the ALJ's decision, the Court notes that Plaintiff's brief is somewhat confusing and often contradictory, and it is difficult to parse out his exact arguments. It is clear, though, that Plaintiff challenges the ALJ's treatment of the medical evidence in formulating his RFC, and the Court will therefore review the decision in this context.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment. SSR 96-8p. In addition, the adjudicator "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments. SSR 96-8p.

The ALJ in this case found the following RFC:

> I find the claimant retains the residual functional capacity to perform light work. He can lift/carry 20 pounds occasionally and 10 pounds frequently. In an 8-hour workday, he can sit/stand/walk for 6 hours. He should avoid constant pushing/pulling. He can occasionally climb, balance, stoop, kneel, crouch and crawl. He should avoid forceful gripping and grasping. He can perform frequent handling and grasping. Although he retains the eyesight in his left eye to read and watch television, he should not perform jobs that require good depth perception.

AR 17.

In formulating this RFC, the ALJ reviewed both Dr. Ley-Han's April 2005 assessment and Dr. McIntire's December 2004 assessment. As to Dr. Ley-Han's opinion, he explained that he accorded it "substantial weight" except for the walking limitations because there was "little evidence" to support it. AR 16. In reviewing Dr. McIntire's opinion, he explained that he gave it, too, "substantial weight." AR 16. However, as to Dr. McIntire's opinion that Plaintiff would have difficulty with activities involving very fine or precise finger movement and performing more than occasional handwriting activities, the ALJ afforded it "less weight" because Plaintiff testified that he used a computer every night and did not have any problems with keyboarding. AR 16.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."'" *Orn,* 495 F.3d at 632; *Murray*, 722 F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical findings that differ

from the findings of the treating physician' such findings are 'substantial evidence.'" *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews*, 53 F.3d at 1041.

Plaintiff first argues that the ALJ should have adopted Dr. Ley-Han's standing and walking limitation. As a threshold matter, insofar as Plaintiff argues that the ALJ must adopt an opinion in its entirety, his argument is incorrect. It is well settled that the ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions. *Magallanes v. Bowen*, 881 F.2d at 753-754. When the ALJ chooses to reject portions of a treating physician's opinion, however, he must do so in accordance with analysis set forth above.

Here, in rejecting Dr. Ley-Han's opinion that Plaintiff was limited to standing and walking for three hours total each, for no more than one hour at a time, the ALJ stated that there was "little evidence" to support such a limitation. AR 16. A lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion. *Id.* at 751. Indeed, when Plaintiff first saw Dr. Ley-Han in June 2004, he noted that his neuropathy was stable on medication and instructed Plaintiff to increase his activity. AR 118. When he returned in November 2004, he was again instructed to increase his activity. AR 116. The only other treatment note from Dr. Ley-Han is from the day he completed the assessment, April 7, 2005. His neuropathy was again described as stable and he instructed Plaintiff to increase his activity. AR 114. Although the ALJ adopted the standing/walking limitation of Dr. McIntire over that of Dr. Ley-Han, Dr. McIntire's opinion constituted substantial evidence for doing so. Dr. McIntire performed his own examination and relied on independent clinical findings that differed from those of Dr. Ley-Han. *Orn*, 496 F.3d 632. In fact, as the ALJ explained, it does not appear that Dr. Ley-Han relied on *any* factual findings.

Plaintiff next argues that the ALJ failed to include Dr. Ley-Han's "most significant restrictions, regarding limits on the hands and legs." Opening Brief, at 7. The ALJ stated that he

accorded these restrictions (occasionally perform simple grasping with both hands and fine manipulation with the right hand, but could never perform fine manipulation with the left hand) "substantial weight," yet his RFC finding included the ability to perform *frequent* grasping and no limitation in fine manipulation. The ALJ did not explain this deviation and this constitutes error.

In rejecting similar fine manipulation limitations imposed by Dr. McIntire, the ALJ stated that Plaintiff testified that he was able to use a computer every night and does not have any problems with keyboarding. AR 16. However, this is not an adequate reason for rejecting the fine manipulation limitations set forth by either Dr. McIntire or Dr. Ley-Han. The medical evidence is clear that Plaintiff suffers from neuropathy, with resulting limitations imposed by both his treating physician and examining physician. Additionally, contrary to the ALJ's interpretation, Plaintiff actually testified that although he uses a computer every night at home to get onto the internet, he is only able to do so for about 20 to 35 minutes at a time because of his vision problems. Although he can use his fingers to type and can maneuver the mouse satisfactorily with this right hand, it is unclear whether the can do so for longer than 20 to 35 minutes. AR 223-224. The ALJ's conclusion that he "does not have any problems keyboarding" is therefore not totally supported and is certainly not a sufficient reason for rejecting these limitations.

In any event, Plaintiff devotes much argument to why the ALJ should have adopted Dr. Ley-Han's opinion and seems to suggest that it would have resulted in a finding of disability. However, the ALJ posed Dr. Ley-Han's exact limitations to the VE, who testified that such a person would still be able to perform the positions she identified. AR 231. So, then, any error in failing to explain his treatment of Dr. Ley-Han's limitations is harmless as it would not have resulted in a different outcome. *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion).

Plaintiff infers from the ALJ's decision that the ALJ gave the greatest weight to Dr. McIntire's opinion. However, the ALJ's RFC appears to be a mix of the opinions of Dr. Ley-Han, Dr. McIntire and Dr. Clancey, the State Agency physician. While this alone is permissible,

it is error to fail to explain the weight given to each opinion and why certain aspects of the opinions were not adopted. For example, in addition to failing to explain why he rejected certain portions of Dr. Ley-Han's opinion, the ALJ failed to even discuss Dr. Clancey's opinion despite having adopted almost all of his limitations over those of Dr. Ley-Han and Dr. McIntire. This Court cannot determine whether the RFC is supported given the ALJ's failure to set forth a complete analysis of the medical opinions. When combined with the ALJ's improper rejection of portions of Dr. McIntire's opinion, as set forth above, the Court concludes that remand is appropriate.

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988). This case must be remanded for further proceedings to allow the ALJ to explain his treatment of the medical evidence in formulating his RFC and, if necessary, to receive additional testimony from the VE.

B.  Plaintiff's Credibility

Next, Plaintiff argues that the ALJ failed to properly analyze his credibility.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment," *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.

1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

Here, the ALJ began his credibility analysis by explaining that although Plaintiff alleges disability since 1998, he reported in August 2002 that he would probably return to work. In May 2003, Plaintiff's next visit to a physician, he reported that he was looking for a job. AR 16, 133, 135. Finally, the ALJ sets forth the treatment notes in May 2004 that indicate that Plaintiff was working the graveyard shift at various jobs and that his hours were different from routine. AR 16. From these statements, the ALJ inferred that Plaintiff did not consider himself disabled despite his allegation to the contrary. This is a reasonable inference given Plaintiff's contradictory statements. The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

Plaintiff argues that ALJ "questions whether Plaintiff has actually returned to work" and argues that Plaintiff testified he has not worked since 1997, his earning records do not show a record of earnings, and the ALJ found that he had not engaged in substantial activity since his alleged onset date. Opening Brief, at 18. However, Plaintiff misunderstands the ALJ's use of Plaintiff's contradictory statements. The ALJ is not necessarily making a determination that Plaintiff was actually working during this time, but is pointing out the inconsistency between

alleging disability since 1998 yet reporting on more than one occasion after 1998 that he believed he could work.

Plaintiff further suggests that the May 2004 notation that Plaintiff "works graveyard shifts at various jobs" was a typographical error and should have read "*worked* graveyard shifts at various jobs." He explains that when he last worked as a registered nurse in 1997, he worked the graveyard shift. Even giving Plaintiff the benefit of the doubt and assuming this is a typographical error, there are other notations in the record cited by the ALJ that suggest he believed he could work despite his allegation of disability.

Next, the ALJ set forth Plaintiff's daily activities:

> He testified that he watches television, reads, goes to bookstores or the mall once a week or every 10 days, occasionally walks for 15-20 minutes, does some housework, shops twice a month, drives, and uses a computer every night utilizing the keyboard and mouse.

AR 16.

To the extent that the ALJ relies on Plaintiff's ability to watch television and read, these "are activities that are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace." *Orn*, 496 F.3d at 639. Defendant suggests that Plaintiff's ability to watch television and read is inconsistent with his allegation that he is visually disabled. This is absurd, to say the least. There is no doubt that Plaintiff is blind in one eye and is visually disabled. That he watches television and reads during the day does not negate his disability. In fact, Plaintiff testified that he sees "okay" and has problems reading small print with his left eye and depth of field. He also testified that he gets frequent headaches and eye aches in his left eye when he uses it for more than 20 to 35 minutes. AR 223. So then, a general statement that Plaintiff watches television and reads, given his further testimony about his vision, is insufficient to suggest that he is less than credible.

Similarly, and as explained above, the ALJ misstated Plaintiff's testimony regarding his use of the computer. The ALJ simply states that Plaintiff "uses a computer every night utilizing the keyboard and mouse." AR 16. Yet Plaintiff continued his testimony, explaining that he cannot do so for more than 20 to 35 minutes because of "painful and distracting" headaches and eye aches. AR 223. Because he is limited due to headaches and eye aches, it is impossible to

know how much longer, if at all, Plaintiff could continue to use the computer given his neuropathy and resulting symptoms. His computer use is therefore not a proper factor for finding him less than credible.

The ALJ's daily activities review is now left with going to bookstores or the mall once a week or every 10 days, occasionally walking for 15-20 minutes, doing some housework, shopping twice a month, and driving. If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations. *Morgan v. Commissioner of Social Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999). The ALJ must make "specific findings relating to [the daily] activities" and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007) (citing *Burch*, 400 F.3d at 681). These activities, however, do not evidence Plaintiff's ability to "spend a substantial part of his day engaged" in activities transferrable to a work setting. In fact, three of the activities, shopping, going to the mall and going to the bookstore, he does less than once a week. Similarly, he testified that he walks once or twice a week. AR 222. As to his driving abilities, he testified that he only drives during the day and only to places where he knows the route in about a five mile radius. AR 222. He did not testify as to how often he drives.

Accordingly, the Court finds that the ALJ's credibility analysis is not supported by substantial evidence. The case is remanded for further credibility analysis.

C.      Conflict Between the VE's Testimony and the DOT

Finally, Plaintiff argues that the RFC finding is inconsistent with the positions identified by the VE given their description in the DOT.

SSR 00-4p states that generally, occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT. Where there is an apparent conflict, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled. *See* SSR 00-4p. The

ALJ may rely on the testimony of a VE over that of the DOT by determining that the explanation given by the VE is reasonable and provides a basis for doing so. *Id.*

Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the [ Dictionary of Occupational Titles ] nor the [vocational expert] ... evidence automatically 'trumps' when there is a conflict." *Massachi v. Astrue,* 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p). Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. *Id.* Where the ALJ fails to ask the VE is the positions are consistent with the DOT, the Court is unable to determine whether substantial evidence supports the ALJ's finding at step five. *Id.*

Here, the following exchange took place:

ALJ: Ms. Cregton-Clovelle, are your job classifications that you've given me today consistent with those in the Dictionary of Occupational Titles?

VE: Yes.

ALJ: Have you had to made any departures in identifying and classifying the jobs for me?

VE: No.

AR 232.

The ALJ therefore followed the mandate of SSR 00-4p, as explained in *Massachi*. Furthermore, an ALJ may take administrative notice of any reliable job information, including information provided by a VE. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir.1995). A VE's recognized expertise provides the necessary foundation for his or her testimony. *Id.*

According to Plaintiff, the DOT defines handling to include "grasping activities."[4] He further contends that it is "inconceivable" that a person precluded from forceful grasping activities could perform a job that requires frequent handling. Based on this definition, he argues

---

[4] The DOT actually defines handling as "Using body members, handtools, and/or special devices to work, move, or carry objects or materials."

18

that "a limitation of no forceful gripping and grasping would interfere with a job that requires frequent reaching and handling." Opening Brief, at 20. The DOT definitions of the four positions identified by the VE, as set forth by Plaintiff, require frequent handling, among other things. Even accepting Plaintiff's argument, however, the RFC finding did not preclude Plaintiff from performing frequent handling. Rather, he was precluded from *forceful* gripping and grasping and could specifically perform *frequent* handling and grasping.

Based on this, and the fact that the ALJ is entitled to rely on job information provided by the VE, the Court finds no error.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff David C. Anderson and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **September 28, 2007**                    /s/ **Dennis L. Beck**
                                              UNITED STATES MAGISTRATE JUDGE